IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH ROSSITER,

                    Plaintiff,

        v.

CITY OF PHILADELPHIA and CHARLES
H. RAMSEY,

                    Defendants.

CIVIL ACTION
NO. 13-3429

**OPINION**

**Slomsky, J.**                                                    **March 17, 2014**

I.      **INTRODUCTION**

Plaintiff Kenneth Rossiter ("Plaintiff") is employed as a police officer with the

Philadelphia Police Department.  Effective July 15, 2012, Plaintiff was terminated when Police

Commissioner Charles H. Ramsey ("Defendant Ramsey") issued a "Commissioner Direct

Action."  The termination was challenged in an arbitration proceeding, and on April 2, 2013 an

arbitrator ordered Plaintiff reinstated.

On June 18, 2013, Plaintiff instituted this action against Defendant Ramsey and the City

of Philadelphia for violating his rights in connection with his termination.   In the Complaint,

Plaintiff alleges five claims in two counts.  Count I alleges the following claims: (1) a procedural

due process claim in violation of 42 U.S.C. § 1983; (2) a "stigma-plus" claim in violation of 42

U.S.C. § 1983[1]; (3) a retaliation claim in violation of Plaintiff's First Amendment right to be

associated with the Fraternal Order of Police ("FOP"); and (4) a retaliation claim in violation of

---

[1] In order to state a claim for deprivation of a liberty interest in reputation, "a plaintiff must show
a stigma to his reputation plus deprivation of some additional right or interest."  Dee v. Borough
of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008) (citations omitted).

Plaintiff's First Amendment right to make a public statement to the press.[2]  Count II alleges a municipal liability claim against the City of Philadelphia.

Presently before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (Doc. No. 4.)  Plaintiff filed a Response in Opposition, and Defendants filed a Reply.  (Doc. Nos. 5, 6.)  On October 22, 2013, a hearing on the Motion was held.  Following the hearing, the Court permitted the parties to submit supplemental briefs, which have been filed of record.  (Doc. Nos. 10, 11.)  For reasons that follow, the Motion will be granted in part and denied in part.

## II.    BACKGROUND

Plaintiff Kenneth Rossiter is a police officer employed by the Philadelphia Police Department.  (Doc. No. 1 at ¶ 12.)  At all times during his employment, Plaintiff has been covered by the terms of the Collective Bargaining Agreement ("CBA") between the City of Philadelphia and the FOP.  (Id. at ¶ 14.)  The FOP is the labor union for City of Philadelphia Police Officers.  Defendant Ramsey is Police Commissioner of the Philadelphia Police Department.

In 2008, several local media sources published reports about overtime abuse among City workers.  (Id. at ¶ 15.)  The Philadelphia Police Department was the subject of particular scrutiny.  (Id.)  In January 2009, the Police Department created an overtime-management unit in an effort to reduce Department expenses.  (Id. at ¶ 16.)

On August 12, 2010, the Philadelphia Daily News published a story on the highest-earners on the City payroll, noting that Defendant Ramsey was the third highest paid employee,

---

[2] In the Complaint, Plaintiff also alleges violations of substantive due process, equal protection, and failure to accord him the benefit of 53 Pa.C.S.A. § 12638 (ensuring that Civil Service employees are not arbitrarily deprived of their employment).  On October 22, 2013, the Court held a hearing on the Motion to Dismiss.  At the hearing, Plaintiff agreed to dismiss these claims.

and singling out Plaintiff as earning the most overtime pay.  Plaintiff's total compensation was $163,923.  (Id. at ¶ 17.)

On July 28, 2011, the Police Department received an anonymous complaint that Plaintiff was at home when he was supposed to be working overtime.  (Id. at ¶ 18.)  In response to this complaint, Sergeant Joseph Nadolski, a member of the Internal Affairs' Integrity Control Unit, began an investigation into Plaintiff's conduct, which included twenty-three days of surveillance during August and September 2011.  (Id. at ¶ 19.)  During this time, Plaintiff was observed at his residence sixteen times when he was recorded for payroll purposes as being on either straight time or overtime.  (Id. at ¶ 20.)

On December 13, 2011, without providing notice to Plaintiff, Sergeant Nadolski questioned Plaintiff regarding each instance he was observed at home by the surveillance team. (Id. at ¶ 21.)  Plaintiff explained to Sergeant Nadolski that he had either worked at home or had stopped at home in each instance.  (Id.)

On or about December 27, 2011, Defendant Ramsey said in a statement to the Philadelphia Daily News that "[o]vertime is not a bad thing, there are things that go beyond your tour of duty" and that "[i]t's not the norm that people would falsify information," but that, "when serious [overtime] wrongdoing is uncovered," he would send the case "to the District Attorney's Office for review for possible criminal charges."  (Id. at ¶ 23.)

On March 29, 2012, the Philadelphia Police Department charged Plaintiff in two counts with "Conduct Unbecoming" of a police officer.  (Id. at ¶ 24.)  Plaintiff was charged with violating Sections 1-§010-10 and 1-§021-20 of the Department's Disciplinary Code.  (Id.) Section 1-§010-10 prohibits members of the Police Department from making false entries in Department records.  (Id.)  Section 1-§021-20 prohibits members of the Police Department from

engaging in conduct that shows little or no regard for Department responsibilities.  (Id.)  A hearing on these violations was scheduled with the Police Board of Inquiry.  It was later postponed and never rescheduled.  (Id.)

In June 2012, Defendant Ramsey gave several statements to the media in which he accused Plaintiff of overtime abuse and indicated his intent to fire Plaintiff.  (Id. at ¶¶ 26, 30.) On or about June 17, 2012, Plaintiff responded publically to these statements.  (Id. at ¶ 27.)  He stated, "Ask the mothers of Claire Clay, Terrence Hawkins, Malik Sims, Andrew Rivera and the Coleman family, ask them if I slept at home while I worked on their cases . . . Ask them if I was at home when I caught their killers."  (Id.)

On or about June 14, 2012, Plaintiff met with FOP labor representatives and was informed that Defendant Ramsey had offered to "give Plaintiff a mere reprimand in response to the charges against him, if the FOP were to withdraw their charge of Unfair Labor Practices in response to Defendant Ramsey's new Disciplinary Code."  (Id. at ¶ 25.)  The FOP declined to do so.  (Id.)

On June 18, 2012, Plaintiff was informed that he was being terminated.  (Id. at ¶ 29.) Effective July 15, 2012, Defendant Ramsey terminated Plaintiff by issuing the "Commissioner Direct Action," without affording Plaintiff a hearing before the Police Board of Inquiry. (Id. at ¶ 32.)

In response to his termination, Plaintiff filed a grievance under the CBA between the City and the FOP.  (Id. at ¶ 34.)  Pursuant to the CBA grievance procedures, the FOP demanded an arbitration hearing on Plaintiff's dismissal.  (Id. at ¶ 35.)  Arbitrator David J. Riley was assigned to the case and held three hearings.  (Id.)  On April 2, 2013, the Arbitrator held that Defendants did not have just cause to terminate Plaintiff.  (Id. at ¶ 39.)  He ordered the City to promptly

4

restore Plaintiff to his former position within the Police Department as a detective in the Homicide Unit, without loss of seniority.  (Id.)  On April 22, 2013, Plaintiff returned to work.  (Id. at ¶ 41.)

Plaintiff claims that since returning to work he has been subjected to continual harassment and retaliation.  (Id.)  Plaintiff alleges that "a portion of the Arbitration funds that were awarded to him were diverted into the Pension Fund as an act of retaliation against him."  (Id. at ¶ 42.)  He also submits that he was forced to remain in an administrative capacity and deprived of overtime pay.  (Id. at ¶ 43.)  He argues that he did not receive his badge and gun for four weeks after he returned to work, he was not allowed to return to active duty on the Special Investigations Unit until nearly one month after his scheduled return to work, and he was reassigned to a different platoon without the thirty-days notice normally given.  (Id. at ¶¶ 44-46.)  Further, Plaintiff alleges that as a result of these incidents, he no longer is able to testify in court proceedings related to investigations because he may be subject to impeachment.  (Id. at ¶ 47.)  Because he can no longer testify in court, he has lost a substantial portion of his income.  (Id.)  As a result of these actions taken against him, Plaintiff commenced the instant suit against Defendant Ramsey and the City of Philadelphia.

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp.,

609 F.3d 239, n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."   Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

6

**IV.    ANALYSIS**

As noted above, Plaintiff is pursuing five claims in his Complaint against Defendant Ramsey and the City of Philadelphia.  Defendant seeks their dismissal and for reasons that follow, the Court agrees that four of the five claims should be dismissed.

**A. Procedural Due Process Claim**

To state a procedural due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." Iles v. de Jongh, 638 F.3d 169, 173 (3d Cir. 2011) (quoting Biliski v. Red Clay Consol. School Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009)).  "The question of whether an employee has a property right in continued employment is a question of state [or territorial] law." Id. (quoting McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995)).  It is well established that police officers have a cognizable property interest in their position as a police officer that triggers the procedural due process protection of the Fourteenth Amendment.  Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 79 (3d Cir. 1989).  The issue before the Court is whether the process afforded Plaintiff met the Fourteenth Amendment standard.

A public employee with a property interest in his or her job is entitled to a "pre[-]termination opportunity to respond, coupled with post-termination administrative procedures." Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 547-48 (1985).  This pre-termination hearing should consist of oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity for the employee to present his side of the story.  Id. at 546.  The hearing may be formal or informal, "so long as it affords the employee an opportunity to make any 'plausible arguments that might . . . prevent [the] discharge.'" Fraternal Order of Police Lodge No. 5, 868 F.2d at 79 (quoting Loudermill, 470

U.S. at 544).  Notice is sufficient "1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case."  Gniotek v. City of Philadelphia, 808 F.2d 241 (3d Cir. 1986).  Pre-termination notice of the charges and evidence against an employee need not be in great detail, as long as it allows the employee "the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges."  McDaniels, 59 F.3d at 457.  Notice of the charges may occur at the time of the pre-termination hearing.  Gniotek, 808 F.2d 244.  Furthermore, an adequate post-deprivation process does not render a noticed pre-deprivation hearing unnecessary.  Schmidt v. Creedon, 639 F.3d 587, 597 (3d Cir. 2011); see also Cotnoir v. University of Me. Sys., 35 F.3d 6, 12 (1st Cir. 1994) (hearing was required prior to termination of employee, even where post-termination union grievance procedures were available).

Plaintiff alleges that he was denied pre-termination procedural due process.  (Doc. No. 11 at 1, 2-5.)  He does not dispute that he was afforded sufficient post-termination due process.  On December 13, 2011, Plaintiff was questioned by Sergeant Joseph Nadolski about his overtime practices.  (Doc. No. 1 at ¶ 21.)  Plaintiff was not provided with notice prior to this questioning.  (Id.)  During the questioning, however, Sergeant Nadolski gave Plaintiff notice of the investigation into his overtime practices.  As the Complaint states:

> On December 13, 2011, without providing notice to Plaintiff, Sergeant Joseph Nadolski questioned Plaintiff about each instance he was observed at home by the surveillance team.  Plaintiff responded that, as permitted by Unit and Department policy, he had worked from home numerous times during that period and recounted the various reasons why he would have stopped at home.  Plaintiff explained further that on any occasion he was observed at home for more than one hour he was working on open cases which involved making phone calls, reviewing files, and using his home computer for research.

(Id.)

Construing these facts in the light most favorable to Plaintiff, the questioning by Sergeant Nadolski constituted a pre-termination hearing.  The questioning occurred prior to Plaintiff's termination.  Plaintiff was provided with oral notice of the charges against him, an explanation of his employer's evidence, and an opportunity to present his side of the story.  While Plaintiff did not receive notice prior to the questioning, notice of the charges may occur at the time of the pre-termination hearing.  Moreover, the hearing may be formal or informal.  At the questioning, Plaintiff was able to respond to Sergeant Nadolski by explaining the reasons why he was at home during overtime hours.  Plaintiff was also apprised of the general evidence against him and was able to determine from the questioning the facts he could marshal in defending the charges.  Furthermore, the questioning was timely because it occurred approximately seven months before Plaintiff was fired.  Because this session with Sergeant Nadolski constituted an adequate pre-termination hearing, Plaintiff's procedural due process rights were not violated.  Thus, Plaintiff has failed to plausibly allege a federal procedural due process violation.  Accordingly, this claim will be dismissed.

**B.  "Stigma-Plus" Claim**

Plaintiff also alleges a due process violation for depriving him of a liberty interest in his reputation.  (Doc. No. 1 at ¶ 54.)  "[R]eputation alone is not an interest protected by the Due Process Clause. . . . Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest."  Dee v. Borough of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008) (citations omitted).  This has been referred to as the "stigma-plus" test.

"[T]o satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements: (1) were made publically, and (2) were false."  Id.; see also Good v. City of Sunbury, 352 Fed. App'x. 688, 690 (3d Cir. 2009).  In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," then it deprives the employee of a protected liberty interest.  Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (citations omitted).

However, when the employer has merely alleged improper or inadequate performance, incompetence, neglect of duty, or malfeasance, then no liberty interest is implicated.  Mercer v. City of Cedar Rapids, 308 F.3d 840, 845 (8th Cir. 2002).  Only "charges that carry the stigma of moral turpitude," or "impugn one's honor or integrity," give rise to due process protection. Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991); Fox v. Cheltenham Twp. Authority, (E.D. Pa. June 18, 2012).  When such a due process deprivation occurs, the appropriate remedy is a name-clearing hearing.  Id.  The hearing should afford the plaintiff an opportunity to "hear and answer first-hand any stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation."  Patterson v. City of Utica, 370 F.3d 322, 335 (2d Cir. 2004).  In some circumstances, such a name-clearing hearing is obviated by prior hearings.  Liotta v. Borough of Springdale, 985 F.2d 119 (3d Cir. 1993).

Plaintiff alleges that Defendant Ramsey defamed him by making several statements to various media sources, accusing Plaintiff of overtime abuse and indicating his intent to fire him. (Doc. No. 1 at ¶ 26.)  For example, on or about June 19, 2012, Defendant Ramsey accused Plaintiff of overtime abuse in statements he made to the Philadelphia Daily News.  (Id. at ¶ 30.) According to the Complaint, the statements continue to be reported by every major news

organization in the Philadelphia area.  (Id. at ¶ 31.)  The statements were therefore made publically and appear to be false based on the decision of the Arbitrator.  Further, these statements allege more than improper performance, neglect of duty, or malfeasance.  Rather, they suggest that Plaintiff was dishonest in his overtime reporting, an accusation that carries a stigma of moral turpitude.  As such, Plaintiff was deprived of a protected liberty interest.

The remedy for such a deprivation of liberty is providing the employee with a name-clearing hearing.  Robinson v. Cnty. of Lancaster, 2005 WL 3557825, *2 (E.D. Pa. Dec. 28, 2005) (citing Graham v. City of Philadelphia, 402 F.3d 139, 144 (3d Cir. 2005)).  The Third Circuit has held that the availability of prior hearings may provide sufficient process to obviate the need for a separate name-clearing hearing.  See Graham, 402 F.3d at 146.  Examples of name-clearing hearings include appeal proceedings through an employer's established grievance process and evidentiary hearings at which the employee was able to testify.  See Robinson, 2005 WL 3557825 at *3; Liotta, 985 F.2d at 122.

Here, Plaintiff was provided with an arbitration hearing in accordance with the grievance procedures in the CBA.  (Doc. No. 1 at ¶ 35.)  The Arbitrator, David J. Riley, held three hearings, at which numerous witnesses testified.  These witnesses included two Homicide Unit detectives who testified on Plaintiff's behalf.  (Id. at ¶ 36.)  After the hearings, the Arbitrator determined that Defendants did not have just cause to terminate Plaintiff and ordered Plaintiff reinstated.  (Id. at ¶¶ 36-38.)

The arbitration hearings provided Plaintiff with an opportunity to hear and answer the charges against him.  He was able to call his own witnesses and present favorable evidence.  In fact, the hearings culminated in Plaintiff's reinstatement.  They therefore cured any injury that Plaintiff suffered to his reputation.  His name was cleared publicly.  As a result, the alleged

deprivation was remedied.  For this reason, Plaintiff has failed to plausibly allege facts that would establish the elements of a "stigma-plus" claim.

### C.     First Amendment Retaliation Claim

Next, Plaintiff alleges that Defendant Ramsey retaliated against him for his association with the FOP and for the public statement he made to the media.[3]  (Doc. No. 1 at ¶¶ 25, 33.) Plaintiff alleges that when the FOP refused to withdraw the complaint of unfair labor practices against Defendant Ramsey, Ramsey in turn retaliated against Plaintiff by terminating him.  (Id.) In addition, Plaintiff alleges that he continues to suffer retaliation in the workplace because of the comment he made to the press.  (Id. at ¶¶ 41-49.)

### 1.     Plaintiff's Claim of First Amendment Retaliation Based on His Association with the FOP Will Not Be Dismissed

In order to properly plead a First Amendment retaliation claim, a plaintiff must allege: (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action.  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)).  It is well established that the First Amendment right of association guarantees the right to join a union, which constitutes a protected activity.  Thomas v. Collins, 323 U.S. 516, 532 (1945).

To establish a causal link between constitutionally protected conduct and retaliatory action, a plaintiff must establish a causal connection between his association with the union and

---

[3] In the Complaint, Plaintiff states that he suffered "denial of freedom from retaliation for exercising his First Amendment rights both as a member of a union and as an employee who filed a grievance."  (Doc. No. 1 at ¶ 54.)  However, in the Motion to Dismiss, Defendants address a claim of First Amendment retaliation based on the public statement Plaintiff made to the media. This claim was also argued by both parties at the October 22, 2013 hearing.  Thus, while Plaintiff does not directly allege in his Complaint a claim of First Amendment retaliation based on his public comment, the Court will nevertheless consider this claim.

his termination.  To do so, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).  The temporal proximity of a retaliatory act to a plaintiff's exercise of his First Amendment rights is probative, but not dispositive, of the causation element of a retaliation claim.  Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003).  For temporal proximity alone to establish causation, the time difference must be so short as to be "unusually suggestive of retaliatory motive."  Marasco, 318 F.3d at 512. While the Third Circuit has not explicitly defined the closeness in time required for temporal proximity, it has held that two days is sufficient to establish causation on its own, while ten days is only sufficient when accompanied by other evidence of retaliation.  See Farrell v. Planters Lifesavers Co., 206 F.3d, 279 n. 5 (3d Cir. 2000); Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3d Cir. 2003).

Here, Plaintiff has satisfied the first two prongs of the test delineated above.  He was a member of the FOP, the Philadelphia Police Officer Labor Union.  His association with the FOP constituted a protected activity.  Plaintiff was subsequently terminated, which constitutes a retaliatory action.  Moreover, an ordinary person could reasonably be deterred from associating with a union if the association could result in termination of employment.

Plaintiff also has established the third prong of the above test.  Plaintiff alleges that he was terminated because of his association with the FOP.  On June 14, 2012, a meeting was held with Plaintiff and FOP labor representatives.  (Doc. No. 1 at ¶ 25.)  At that meeting, Plaintiff was informed that Defendant Ramsey had offered to drop the charges against him if the FOP would

agree to withdraw their charge of unfair labor practices.  (Id.)  The FOP declined to do so and, four days later on June 18, 2012, Plaintiff was informed that he was being terminated. (Id. at ¶¶ 25, 29.)  The temporal proximity of four days between the FOP meeting and Plaintiff's termination is short enough to suggest retaliatory motive.  This establishes causation between Plaintiff's association with the FOP and his termination.  Therefore, in construing the facts in the light most favorable to Plaintiff, he has succeeded in plausibly alleging a First Amendment retaliation claim against Defendant Ramsey based on his association with the FOP.

### 2.    Plaintiff's Claim for First Amendment Retaliation Based on the Statement He Made to the Press Will be Dismissed

Plaintiff claims that he has been retaliated against for a statement he made to the press. "A public employee has a constitutional right to speak on matters of public concern without fear of retaliation."  Baldassare v. New Jersey, 250 F.3d 188, 194 (2001).  However, "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Swartzwelder v. McNeilly, 297 F.3d 228, 235 (3d Cir. 2002) (quotations and citations omitted). Thus, to accommodate the conflicting interests of the employee and the government, a two-part inquiry is used to determine whether a public employee's speech is protected by the First Amendment: (1) whether the employee's conduct addresses a matter of public concern; and (2) whether the value of that expression outweighs the government's interest in the effective and efficient fulfillment of its responsibilities to the public.  Azzaro v. County of Allegheny, 110 F.3d 968, 976 (3d Cir. 1997).

The first question is "whether the employee's speech can be fairly considered as relating to any matter of political, social, or other concern to the community."  Swartzwelder, 297 F.3d at 235.  "[S]peech related to broad social or policy issues is of public concern."  Sanguigni v.

Pittsburgh Bd. of Pub. Educ., 968 F.2d 393, 397 (3d Cir. 1992).  However, speech pertaining to private grievances not of interest to the public at large is not speech on a matter of public concern.  Swineford v. Snyder Country Pa., 15 F.3d 1258, 1271 (3d Cir. 1994); Cooper v. Cape May Cnty. Bd. of Soc. Servs., 175 F.Supp.2d 732, 743-44 (D.N.J. 2001) (public employee's speech about supervisor's behavior was not of public concern because "the general public does not share [plaintiff's] concern with" his superior's actions toward him); Kadetsky v. Egg Harbor Township Bd. of Educ., 164 F.Supp.2d 425, 435 (D.N.J. 2001) (teacher's speech on school policies not of public concern because teacher "was motivated at all times by concern for his personal employment").  To distinguish between speech related to a matter of public concern and speech that is personal in nature, the "content, context, and form of the statements, including the motivation of the speaker, must be evaluated."  Connick v. Myers, 461 U.S. 138, 147 (1983).

Here, Plaintiff made the following public statement:  "Ask the mothers of Claire Clay, Terrence Hawkins, Malik Sims, Andrew Rivera and the Coleman family, ask them if I slept at home while I worked on their cases . . . Ask them if I was at home when I caught their killers." (Doc. No. 1 at ¶ 27.)  This statement was a public response to accusations by Defendant Ramsey that Plaintiff had engaged in overtime abuse.  (Id. at ¶ 26.)  Plaintiff made this statement to defend himself and to refute Defendant Ramsey's accusation.  Rather than pertaining to a matter of public concern, the statement focused, however, on Plaintiff's personal employment and potential dismissal from the Police Department.  The motivation behind it was to clear Plaintiff's name, not to relay a matter of political, social, or other concern to the community.

Plaintiff contends that because Defendant Ramsey commented on Plaintiff's alleged overtime abuse to the press, his overtime abuse became a matter of public concern. (Doc. No. 5 at 22.)  Plaintiff also argues that his statement relates to police misconduct, which is a matter of

public concern.  These arguments are unpersuasive.  While the dispute between Defendant

Ramsey and Plaintiff did become public through the media, this circumstance does not change

the personal nature of the dispute.  Moreover, while the Court agrees that police misconduct may

be considered a matter of public concern for purposes of a First Amendment retaliation claim, no

facts were included in Plaintiff's statement that relate to this topic.  Nothing in Plaintiff's

statement refers to the article about the highest-earners on the City payroll or the systematic

problem with police overtime abuse.  Rather, Plaintiff spoke about the accusations made against

him personally.

The Third Circuit case <u>Kline v. Valentic</u> reinforces the personal nature of Plaintiff's

statement.  283 F. App'x 913 (3d Cir. 2008).  In <u>Kline</u>, a police officer complained about

allegedly false statements made during an investigation into his own conduct.  <u>Kline</u>, 283 Fed.

App'x. at 916.  The court held that speech driven by a public employee's desire to defend his

career and reputation is not protected speech that could support a First Amendment retaliation

claim.  <u>Id.</u>  The court also stated that the police officer had spoken "not as a citizen, but as a

police officer whose own official conduct had been called into question . . . ."  <u>Id.</u>  While the

police officer did not use a public forum to voice his complaints the way Plaintiff did here, the

court's analysis of the content of his statements is applicable to this case.

Because Plaintiff has failed to plausibly allege that his statement related to a matter of

public concern, the claim of a First Amendment retaliation violation based on that statement will

be dismissed.

### D.  The Municipal Liability Claim against the City of Philadelphia

In Count II of the Complaint, Plaintiff asserts a municipal liability claim against the City

of Philadelphia pursuant to 42 U.S.C. § 1983.  (Doc. No. 1 at ¶¶ 56-64.)   Plaintiff alleges that

between 2008 and 2010, Defendant Ramsey, acting under color of state law, issued

approximately fifty-one "Commissioner Direct Action" dismissals without following internal

investigation procedures.  (Id. at ¶ 57.)   Plaintiff claims that these dismissals deprived the

terminated officers of their constitutional right to procedural due process. (Id.)

A governmental entity can only be held responsible under § 1983 "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts injury."  Monell v. Dep't of Soc. Servs. of

City of New York, 436 U.S. 658, 694-95 (1978).  A "policy is made when a decisionmaker

possessing final authority to establish municipal policy with respect to the action issues a final

proclamation, policy or edict, [and a] custom is an act that has not been formally approved by an

appropriate decisionmaker, but that is so widespread as to have the force of law."  Natalie v.

Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  To establish a municipal

liability claim, a plaintiff "must identify a custom or policy, and specify what exactly that custom

or policy was."  Id. at 658.

Here, as noted in Section IV(A) above, Plaintiff has not sufficiently alleged a violation of

his procedural due process rights that resulted in an injury under Monell.  When Defendant

Ramsey terminated Plaintiff through a "Commissioner Direct Action," it was based on an

investigation by Sergeant Nadolski.[4]  Sergeant Nadolski questioned Plaintiff about his specific

conduct and afforded him the opportunity to respond to the accusations being made against him.

This procedure constituted sufficient pre-termination due process.  A hearing before the Police

Board of Inquiry was not required before issuing the "Commissioner Direct Action."  Moreover,

---

[4] Regardless of whether the "Commissioner Direct Action" and the internal investigation that
preceded it are viewed somehow as a policy, edict, or custom, no constitutional right of Plaintiff
has been violated under the Monell claim.

Plaintiff does not dispute that he was provided with sufficient post-termination due process through the arbitration proceeding.

Under <u>Monell</u>, a municipal entity is liable only if a municipal policy or custom caused a plaintiff to be deprived of a federal right.  <u>See, e.g.</u>, <u>Los Angeles County, Cal. v. Humphries</u>, 131 S.Ct. 447, 450 (2010).  Because Plaintiff has failed to plausibly allege a violation of his constitutional rights caused by a municipal custom or policy, Count II of the Complaint must be dismissed and the City of Philadelphia will be dismissed as a defendant.

## V.    CONCLUSION

Because Plaintiff has not satisfied the elements of a procedural due process claim in violation of 42 U.S.C. § 1983, a "stigma-plus" claim in violation of 42 U.S.C. § 1983, a First Amendment retaliation claim based on the public statement he made to the press, or a municipal liability claim against the City of Philadelphia, those claims will be dismissed. [5]   Plaintiff's claim for retaliation in violation of his First Amendment right to be associated with the FOP will proceed.  An appropriate Order follows.

---

[5] As noted above, Plaintiff agreed to dismiss his claims against Defendant Ramsey for violation of substantive due process, equal protection, and deprivation of employment under state law. Therefore, these claims, as set forth in Count I, will be dismissed.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH ROSSITER,

                Plaintiff,

    v.

CITY OF PHILADELPHIA and CHARLES
H. RAMSEY,

                Defendants.

CIVIL ACTION
NO. 13-3429

## <u>ORDER</u>

**AND NOW**, this 17th day of March 2014, upon consideration of Defendants' Motion to

Dismiss for Failure to State a Claim (Doc. No. 4), Plaintiff's Response in Opposition (Doc No.

5), Defendants' Reply (Doc. No. 6), the arguments of counsel at the hearing on the Motion held

on October 22, 2013, and the parties' supplemental briefs (Doc. Nos. 10, 11), it is **ORDERED**

that Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 4) is **GRANTED IN**

**PART AND DENIED IN PART** as follows:

1. Plaintiff's procedural due process claim as alleged in Count I is **DISMISSED**.

2. Plaintiff's "stigma-plus" claim as alleged in Count I is **DISMISSED**.

3. Plaintiff's retaliation claim in violation of his First Amendment rights based on his public

    statement to the press as alleged in Count I is **DISMISSED**.

4. Plaintiff's retaliation claim in violation of his First Amendment rights based on his

    association with the FOP as alleged in Count I will not be dismissed and will proceed to

    discovery.

5.  Plaintiff's municipal liability claim against the City of Philadelphia as alleged in Count II is **DISMISSED**.

6.  Defendant is directed to file an Answer to the remaining claim in Count I within twenty days from the date of this Order.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.